FILED
COURT OF APPEALS
DIVISION II

2013 APR -2 AM 8:48

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42521-1-II |
| Respondent, | |
| v. | |
| JAMES MICHAEL BEEBE, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. — James Michael Beebe appeals his stipulated facts bench trial conviction for one count of possession of depictions of a minor engaged in sexually explicit conduct. He argues the trial court erred when it denied his motion to suppress evidence gathered as a result of a search warrant. He contends that (1) probable cause did not support the search warrant and the information in the statement of probable cause was stale; and (2) the search warrant lacked particularity and was overbroad, encompassing materials that are protected by the First Amendment. Because probable cause supported the search warrant, the supporting information was not stale, and any potential lack of particularity or overbroadness can be cured by severing portions of the search warrant, we affirm.

FACTS

I. INVESTIGATION

In October 2007, the federal Innocent Images Unit (IIU)[1] obtained a spreadsheet containing information about transactions individuals in the United States had engaged in with iWest, a payment website that processed payment for subscription websites known to contain child pornography. The spreadsheet showed that between July 23 and August 29, 2007, someone using Beebe's name, Comcast e-mail address, phone number, and physical address had paid $79.95 to $99.95 to subscribe to three websites: All 18 Lolitas, Extreme Material, and Pedoland-Kidz Porn. In response to a subpoena, Comcast verified that the Comcast subscriber e-mail address was Beebe's and that the address they had for Beebe matched the physical address reported in the spreadsheet.

An undercover agent had purchased access to, visited the Extreme Material website, and viewed several depictions of "child pornography." Clerk's Papers (CP) at 61. The agent conducted a screen capture of some of the images. Washington State Patrol Detective Kim Holmes reviewed those images and believed them to "depict minors engaged in sexually explicit conduct." CP at 61. In March 2009, Detective Holmes verified that Beebe was still listed as the Comcast subscriber at the address given in the IIU spreadsheet.

---

[1] The IIU and United States Immigration and Customs Enforcement (ICE), as part of a joint initiative, were conducting a covert investigation in which they attempted to gain access to commercial websites purporting to offer child pornography.

## II. SEARCH WARRANT

On April 22, 2009, Detective Holmes applied for a search warrant authorizing a search of Beebe's home. In her affidavit, she stated:

> As a result of my training and experience, and based upon my conversations with other experienced law enforcement officers with whom I am associated, I know that individuals involved with trading and collecting child pornography are need driven, and their behavior is predictable and long term. The images collected by these individuals are of significant value to them. The collection is protected and safeguarded at any cost, and will only be discarded in extreme situations of being exposed or detected.

CP at 26. She also stated:

> Persons involved in sending or receiving child pornography tend to retain it for long periods of time. They collect books, magazines, newspapers and other writings on the subject of sexual activities involving children. They maintain ledgers, carry books and/or other writings that contains [sic] identities of the person(s) who are involved in similar acts. Their behavior is need driven and these individuals prize the images obtained[,] traded and/or sold. In addition to their "emotional" value, the images are valuable as trading/selling material and, therefore, are rarely destroyed or deleted by the individual collected. . . .
>
> . . . .
>
> Furthermore, in my experience and from my conversations with computer forensic examiners, computer evidence can remain stored on computers for extended periods of time. Even when computer evidence is deleted it may still be recovered from computer hard drives, floppy disks, or other computer information storage devices.

CP at 28-29.

Detective Holmes also described the IIU/ICE investigation of commercial websites offering child pornography through the "payment website" iWest. CP at 30. She stated that the investigation established that iWest processed payments for more than 200 child pornography websites and that iWest did not "appear to exist outside of these child pornography websites." CP at 30. She also set out the information that the IIU investigators had provided as described

3

above, including that the information indicated that Beebe had attempted to "subscribe to several websites, to include Extreme Material, by utilizing the iWest payment webpage." CP at 30. Detective Holmes concluded that there was probable cause to believe that records about the distribution of depictions of minors engaged in sexually explicit conduct were maintained in Beebe's private electronic mail, computer files, computer storage facilities, or other data storage facilities.

The court issued a search warrant for Beebe's residence. The search warrant encompassed Beebe's computer and computer devices, storage materials, and peripheral devices; documents that could be "indicators of occupancy" or show the location of other storage facilities; business records; and electronic communications. CP at 65. In addition, it encompassed photography equipment and related media storage, and

> [a]ny photographs, pictures, albums of photographs, books, newspapers, magazines, and other writings on the subject of sexual activities involving children, pictures and /or drawings depicting children under the age of eighteen years who may be victims of the aforementioned offenses, and photographs and/or pictures depicting minors under the age of eighteen years engaged in sexually explicit conduct as defined in RCW 9.68A.011(3).

CP at 66.

On April 23, 2009, officers searched Beebe's house and seized his computer.[2] A forensic computer examination located a video and three images depicting minors engaging in sexually explicit conduct. The State charged Beebe by first amended information with one count of

---

[2] The record does not state whether officers seized any other items during this search.

possession of depictions of a minor engaged in sexually explicit conduct,[3] occurring between July 23, 2007 and April 23, 2009.

### III. SUPPRESSION MOTION AND BENCH TRIAL

Beebe moved to suppress the evidence found during the April 23, 2009 search. He argued that (1) the search warrant lacked particularity and was overbroad because it encompassed constitutionally protected materials; and (2) the affidavit supporting the search warrant was stale and failed to establish probable cause for the search. At the suppression hearing, Beebe specifically challenged the portion of the search warrant allowing seizure of "photographs, pictures, albums," and "books, newspapers, magazines, and writings," and the like, as lacking "particularity." Verbatim Report of Proceedings (Oct. 11, 2010) at 8-9. The trial court denied the motion to suppress.[4]

After we denied discretionary review of the trial court's order denying Beebe's suppression motion,[5] the parties agreed to a stipulated facts bench trial. The stipulated facts summarized the investigation that resulted in finding four computer files depicting minors engaged in sexually explicit conduct on Beebe's computer. The stipulation indicated that "a majority" of these files "were accessed by the user on April 20, 2009 in the evening, three days

---

[3] Former RCW 9.68A.070 (2006).

[4] Beebe assigns error to the trial court's written findings of fact 1.2 and 1.3 and written conclusions of law 2.3 through 2.6. But he does not present any argument related to these assignments of error beyond challenging the probable cause finding and the scope of the search warrant. Accordingly, we limit our analysis to those arguments. RAP 10.3(a)(6).

[5] *See* Ruling Denying Review, *State v. Beebe,* No. 41494-5-II (filed Feb. 3, 2011).

prior to the computer being seized." CP at 80. The stipulation did not mention any other evidence that had been obtained during the April 23 search. The trial court found Beebe guilty of possession of depictions of a minor engaged in sexually explicit conduct.

Beebe appeals.

## ANALYSIS

### I. PROBABLE CAUSE AND STALENESS

Beebe first argues that the trial court erred in denying the motion to suppress because Detective Holmes's affidavit did not establish probable cause that a crime had been committed. Specifically, he argues that the affidavit did not establish that he had ever "downloaded" any sexually explicit material or that any evidence would still be in his possession more than a year and a half after the initial investigation. Br. of Appellant at 10.

> We generally review the issuance of a search warrant only for abuse of discretion. Normally we give great deference to the issuing judge or magistrate. However, at the suppression hearing the trial court acts in an appellate-like capacity; its review, like ours, is limited to the four corners of the affidavit supporting probable cause. Although we defer to the magistrate's determination, the trial court's assessment of probable cause is a legal conclusion we review de novo.

> A search warrant should be issued only if the application shows probable cause that the defendant is involved in criminal activity and that evidence of the criminal activity will be found in the place to be searched. The probable cause requirement is a fact-based determination that represents a compromise between the competing interests of enforcing the law and protecting the individual's right to privacy. The affidavit should be evaluated in a commonsense manner, rather than hyper-technically. But an affidavit in support of a search warrant must be based on more than mere suspicion or personal belief that evidence of a crime will be found on the premises searched. Probable cause for a search requires a nexus between criminal activity and the item to be seized and between that item and the place to be searched.

6

*State v. Neth*, 165 Wn.2d 177, 182-83, 196 P.3d 658 (2008) (citations omitted). "Probable cause is established when an affidavit supporting a search warrant provides sufficient facts for a reasonable person to conclude there is a probability the defendant is involved in the criminal activity." *State v. Vickers*, 148 Wn.2d 91, 108, 59 P.3d 58 (2002) (citations omitted).

> In some situations, the evidence relied upon in support of a warrant application may become stale so that probable cause no longer exists. *State v. Smith*, 60 Wn. App. 592, 602, 805 P.2d 256[, *review denied*, 116 Wn.2d 1031] (1991). As explained in *Smith*, one factor to consider in assessing whether evidence is stale is the number of days intervening between the date on which the evidence was gathered and the date on which the warrant was issued. 60 Wn. App. at 602 (citing *State v. Higby*, 26 Wn. App. 457, 460, 613 P.2d 1192 (1980)). The passage of time, however, is "not controlling." *Smith*, 60 Wn. App. at 602, 805 P.2d 256 (citing *Higby*, 26 Wn. App. at 460, 613 P.2d 1192). "*Other factors to be considered include the nature of the crime, the nature of the criminal, the character of the evidence to be seized, and the nature of the place to be searched.*" *Smith*, 60 Wn. App. at 602, 805 P.2d 256 (citing *Higby*, 26 Wn. App. at 460, 613 P.2d 1192; 2 W. LaFave, Search and Seizure, § 3.7(a) at 77 (2d ed. 1987)).

*State v. Garbaccio*, 151 Wn. App. 716, 728, 214 P.3d 168 (2009) (emphasis added), *review denied*, 168 Wn.2d 1027 (2010).

We hold that Detective Holmes's affidavit provided sufficient probable cause to support the search warrant and sufficient facts to establish that the evidence sought would likely still be in Beebe's home despite the delay in obtaining the search warrant. The illegal activity identified in the affidavit included possession of child pornography. The affidavit established that (1) over an approximately one-month period, someone using Beebe's computer purchased access to three websites from a payment website known to service only child pornography websites, and at least one of these websites contained child pornography; (2) collectors of child pornography value their materials and tend to retain those materials; and (3) computer files can remain on computers

for extended periods of time, can be transferred to other media or storage devices, or can be recovered even after they are deleted. Although Beebe is correct that Detective Holmes's affidavit did not specifically state that Beebe had *downloaded* files from any website, the fact that Beebe purchased access to three sites through a payment website that serviced only child pornography websites and that he made these purchases over a month-long period would allow a reasonable person to conclude that there was a probability that he had downloaded files. Additionally, a reasonable person could conclude, based on the nature of the crime and the character of the evidence to be seized, that there was a probability that Beebe either retained the same computer or had transferred his existing files to a new computer and that he still possessed the actual files or some record of those files. These facts would allow a reasonable person to conclude that there was a probability that, at the time of the search, (1) Beebe's computer or related storage devices contained child pornography, and (2) there was reason to believe those files may still exist despite the length of time since the original investigation.

Beebe attempts to distinguish this case from *Garbaccio*. In *Garbaccio*, an investigation disclosed that multiple child pornography computer files from the defendant's computer had been made publically available on the internet and investigating officers obtained a search warrant five months after these files were discovered. 151 Wn. App. at 721-22. Division One of this court held that (1) probable cause supported the warrant because investigators had established that the publically-available files had come from the defendant's computer; and (2) the information in the supporting affidavit was not stale because the affidavit established that "collectors of child pornography often retain the contraband" and, even if the actual files were no longer there, the computer would likely contain metadata related to the contraband material.

8

*Garbaccio*, 151 Wn. App. at 729. Beebe asserts that his case is different because there was no evidence that he had made any files available to the public and there was no evidence that he had actually downloaded any files himself. Although *Garbaccio* involved significantly stronger evidence supporting probable cause, Beebe does not show that evidence must rise to that level to support probable cause. As discussed above, we hold that the evidence was sufficient to establish probable cause and to show that the files would still likely be available.

Beebe also attempts to distinguish his case from *United States v. Lacy*, 119 F.3d 742 (9th Cir. 1997), *cert. denied*, 523 U.S. 1101 (1998), essentially asserting that there was no evidence here that he had downloaded any files. He also asserts that although the *Lacy* court acknowledges that computer files may be available for some time after a file has been downloaded, it did not condone a conclusion that such files would be available indefinitely. As discussed above, although there may not have been any direct evidence that Beebe had downloaded files, there were sufficient facts in the affidavit to allow a reasonable person to conclude that he had done so. Additionally, although the *Lacy* court stated that it was "unwilling to assume that collectors of child pornography keep their materials indefinitely," it also noted that the affiant's assertion that such individuals are known to keep their materials "for long periods," combined with the electronic nature of the materials, was sufficient to justify the issuance of a warrant 10 months after the investigation. *Lacy*, 119 F.3d at 746. Here, although the delay in obtaining the search warrant was longer, Detective Holmes had verified that Beebe was still using the same IP address at the same location. The affidavit also established that files, or evidence of such files, can remain available for a long time. This was sufficient to allow a

reasonable person to conclude that it was likely that the evidence could still be found on Beebe's computer.

Beebe also relies on *United States v. Weber*, 923 F.2d 1338 (9th Cir. 1990). But *Weber* is inapposite because it addresses whether an officer's statement that certain categories of individuals are known to retain *printed* versions of prohibited materials for long periods of time was sufficient to support the warrant. *Weber*, 923 F.2d at 1344-45. This case, in contrast, involves *electronic files* rather than printed materials.[6] Here, it was much more likely that any downloaded files were still present, and Detective Holmes's affidavit established that this was a possibility, even if the original files had been deleted. *See also United States v. Gourde*, 440 F.3d 1065, 1071 (9th Cir. 2006) (acknowledging that computer files may be restored after deletion and that there is a likelihood that there would remain at least a "digital footprint of the images"), *cert. denied*, 549 U.S. 1032 (2006); *Lacy*, 119 F.3d at 746-47 (holding that the nature of the crime involving child pornography, as set forth in the affidavit, "provided 'good reason[ ]' to believe the computerized visual depictions downloaded by Lacy would be present in his apartment when the search was conducted ten months later.").

Relying on *Gourde*, 440 F.3d 1065, Beebe also argues that probable cause cannot be established unless there was evidence that he had taken continuous affirmative steps to access the prohibited materials. In *Gourde*, the defendant had paid a $19.95 monthly subscription to a

---

[6] This case also differs from *Weber* because there was no evidence in *Weber* suggesting that the defendant had ever received or accepted any prohibited print materials, whereas here, Detective Holmes's affidavit was sufficient to allow a reasonable person to conclude that Beebe had downloaded files. *Weber*, 923 F.2d at 1340.

website that provided access to child pornography, he paid the subscription for three consecutive months, and the search warrant was issued a mere four months after the last possible date that the defendant could have accessed the site. *Gourde*, 440 F.3d at 1071. The *Gourde* court noted that (1) the subscription itself was sufficient to create probable cause that the defendant had intentionally availed himself of the site and created a "fair probability" that the defendant "had, in fact, received or downloaded images"; and (2) the nature of computers indicated that there was still a likelihood that any such files would still be on the computer. *Gourde*, 440 F.3d at 1071 (internal quotation marks omitted). Beebe argues that the fact the defendant in *Gourde* paid a monthly subscription for three consecutive months demonstrates that "continuous, affirmative steps" are *required* to find probable cause. Br. of Appellant at 12. But the *Gourde* court did not state that the length of time the defendant had been a member was a significant factor. The court merely indicated that obtaining a membership required an intentional act, and that was a factor that could support probable cause.

Here, there was nothing in the affidavit about whether Beebe's membership with Extreme Materials or the two other sites he paid to join were monthly obligations or whether the memberships ran for a longer period of time. But, regardless of the length of his memberships, Beebe's intentional act of paying for three memberships to websites that provided access to illegal materials, creates a reasonable probability that he accessed those sites and downloaded materials. Combined with the fact that computers retain data for long periods of time, this information clearly provided probable cause supporting the search warrant.

## II. PARTICULARITY

Beebe next argues that the search warrant was overbroad and lacked sufficient particularity because it allowed for the seizure of materials protected by the First Amendment. Specifically, he asserts that the warrant was overbroad because it included many items that were "unrelated to the statutory definitions of sexually explicit materials," namely "photography equipment, photographs, pictures, books, newspapers, magazines and other writings on the subject of 'sexual activities involving children, pictures and/or drawings depicting children under the age of 18 years who may be victims of the aforementioned offenses, as well as any photographs or pictures depicting minors under the age of 18 years engaging in sexually explicit conduct as defined in RCW 9.68A.011(3).'" Br. of Appellant at 14 (citing CP at 36). Beebe is not entitled to relief on this ground.

A warrant is overbroad when it describes many items but fails to link some of them to the offense. *State v. Griffith*, 129 Wn. App. 482, 489, 120 P.3d 610 (2005) (citing *State v. Perrone*, 119 Wn.2d 538, 555-56, 834 P.2d 611 (1992)), *review denied*, 156 Wn.2d 1037 (2006). And courts require a heightened degree of particularity when a search warrant includes items protected by the First Amendment, such as books and films. *State v. Chambers*, 88 Wn. App. 640, 644, 945 P.2d 1172 (1997) (citing *Perrone*, 119 Wn.2d at 547; *Gonzales v. State*, 577 S.W.2d 226, 228, *cert. denied*, 444 U.S. 853 (1979)). But even presuming that that the search warrant was overbroad or insufficiently particular as to the materials Beebe asserts were protected by the First Amendment, under the severability doctrine, only the invalid portions of the warrant must be suppressed unless the valid portions of the warrant cannot be meaningfully severed from the warrant as a whole. *Perrone*, 119 Wn.2d at 556-57.

Here, the potentially-invalid portions of the search warrant can be meaningfully severed. The computer and related equipment and storage media were specifically named in the warrant and were connected to the crime because the statement of probable cause clearly alleged that Beebe obtained the unlawful images via his computer. Any reference to the potentially-constitutionally-protected materials that Beebe now claims, such as books and photographs, could easily be removed from the warrant without rendering it meaningless. Additionally, based on the record before us, the computer was the only evidence seized that the trial court considered in convicting Beebe. Thus, even if the trial court should have suppressed the items seized under the remainder of the warrant, the evidence that supports Beebe's conviction, namely the computer, was validly seized. *See Griffith*, 129 Wn. App. at 489.

Holding that the trial court did not err in denying the motion to suppress, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Johanson, A.C.J.

We concur:

_____
Hunt, J

_____
Bjorgen, J.

13